IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 22CR403 |
| | ) | |
| | ) | Judge Christopher R. Cooper |
| | ) | |
| MATTHEW HUTTLE | ) | |

**DEFENDANT'S SENTENCING MEMORANDUM**

Matthew Huttle is a 41-year-old journeyman carpenter from rural Indiana who struggled with alcoholism for over 20 years, and who has made many mistakes in his life and has been humbled on more than a few occasions. As a result of his drinking and reckless behavior, he has experienced legal consequences, family issues, and most recently, severe health problems including cirrhosis of the liver. Much of Matt's criminal history and many of the problems in his life in general are directly related to his extreme alcohol abuse. The diagnosis of cirrhosis was the final straw, and Matt stopped drinking at the end of 2019 and has no plans to resume drinking.

Matt's offense conduct in this case—in 2021—was not caused by his drinking. It was a reckless decision resulting from Matt's stupidity and failing to think through his actions. Shortly after Matt was released from jail on his last DUI, his uncle Dale asked him if he would drive him to DC for the Trump rally on January 6. Matt has his grievances with the government and the imbalance of power in the country, but he is not a true believer in any political cause. He instead went to the rally because he thought it would be a historic moment and he had nothing better to do after getting out of jail. He regrets his actions that day and understands he must serve a just punishment. Matt took the first step by accepting responsibility and pleading guilty to one count of Entering and Remaining in a Restricted Building or Ground, in violation of 18 U.S.C. § 1752(a)(1), which is a Class A misdemeanor. *See* Doc. 38.

1

Mr. Huttle, by his attorney Andrew Hemmer of the Federal Defender Program, now submits this sentencing memorandum requesting that the Court impose a sentence of 18 months' probation, as recommended by the probation office, with the first 90 days served on home detention, $500 in restitution (as agreed to by the parties), and no fine.

## I.       The defense agrees with the PSR's calculated guidelines range

As an initial matter, the defense does not object to the guidelines calculation in the PSR of 6–12 months, which is based on a total offense level of 4 and a criminal history category of VI. PSR ¶ 100.

## II.      A sentence of probation is appropriate under the 18 U.S.C. § 3553(a) factors

Under 18 U.S.C. § 3553(a), the Court is to impose a sentence that is "sufficient, but not greater than necessary" to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; to afford adequate deterrence to criminal conduct; to protect the public; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment. 18 U.S.C. § 3553(a)(2). The Court is to also consider factors including the nature and circumstances of the offense and the history and characteristics of the defendant; the kinds of sentences available; the applicable guidelines range; the need to avoid unwarranted sentencing disparities; and the need to provide restitution to victims. *See* 18 U.S.C. § 3553(a).

The defense suggests that a sentence of 18 months' probation, with the first 90 days to be served on home detention, would be a sufficient sentence.[1] The defense would also request that no fine be imposed, since it would be difficult for Mr. Huttle to pay a fine. *See* PSR ¶¶ 97–98.

### A.      History and characteristics of Mr. Huttle

Mr. Huttle was born in Porter, Indiana and raised by his mother, a teacher, and his father, a

---

[1] The probation office recommended a sentence of 18 months' probation and no fine. *See* Doc. 46.

police officer. PSR ¶ 86. He had a "good home life" and his parents raised him and his sister in a safe area. PSR ¶ 86. Matt was a good student, graduating from Merrillville High School in 2001 and receiving an associate's degree from Ivy Tech in 2005. PSR ¶ 95. Growing up in Indiana, he was involved in sports and Boy Scouts of America and earned the achievement of Eagle Scout. PSR ¶ 86. Matt has worked as a journeyman carpenter since 2001 and has specialized training in the field. PSR ¶¶ 95–96. He's a hard worker and often needs to relocate and resettle his life on short notice to find new work. He's lived in California, Idaho, Arkansas, and Indiana and will likely try to relocate again, to another location in Indiana, once this case is resolved. *See* PSR ¶ 89.

He has an 8-year-old daughter and a 16-year-old son who live in Indiana. PSR ¶ 88. Matt has been prevented from having any parental visitation with his daughter since his arrest in this case. *See* PSR ¶ 88. Matt has a great relationship with his son, who lives with Matt's sister and brother-in-law. PSR ¶ 88. Matt has experienced plenty of tragedy and loss in his life as well. His mother died in April 2023 and the mother of his son died in 2022 from a fentanyl overdose. PSR ¶¶ 87–88. In 2015, Matt was shot in the back of the knee, and in 2018 he was attacked with a hammer and baseball bat by his son's mother's boyfriend, causing extensive chronic injuries. PSR ¶ 92.

His physical health has been rapidly deteriorating over the past few years, including traumatic arthritis in his knees from workplace and personal injuries, chronic arthritis in his hand, wrist, back and shoulders, emphysema, left knee and lower back displacement, deteriorating discs in his neck, and late-stage cirrhosis of the liver. PSR ¶ 91. He has surgeries that are soon to be scheduled (which he will be unable to do if he is incarcerated) to remove a screw in his right tibia and to work on the joint in his left knee that has been badly damaged by his traumatic arthritis. *See* PSR ¶ 91.[2] He will require months of physical therapy after these surgeries as well. He has also

---

[2] The PSR notes an appointment on November 8, 2023 to have the screw removed from the right tibia. PSR ¶ 91. Matt had to postpone that appointment pending his sentence in this case since physical therapy will be required after the surgery. Matt had to postpone the November 18, 2023 MRI also (*see* PSR ¶ 91), which is

been diagnosed with alcohol dependence, depressive disorder, and post-traumatic stress disorder. PSR ¶ 92.

Matt's diagnosis of liver cirrhosis stemmed from the biggest battle he's faced in his lifetime: alcoholism. PSR ¶ 94. Many of Matt's problems in life can be traced directly back to his serious problem with alcohol. He began drinking as a teenager and continued until about age 37 or 38. *See* PSR ¶ 94. Beginning in his early 20s and continuing all the way to his late 30s (a period of almost 15 years), Matt consumed about 12 to 18 beers almost every day. *See* PSR ¶ 94. He has many criminal convictions including seven DUIs, a conviction for conversion (he was drunk when he drove away from the gas station without paying), disorderly conduct, battery, and failure to return to lawful detention. PSR ¶¶ 50–60. All of these convictions can be attributed in some way to his drinking.

In 2019, when he was diagnosed with severe liver cirrhosis, he made the decision to stop drinking. PSR ¶ 94. Since then, he's had no criminal convictions of any kind, and his brother-in-law has noticed "a significant, positive change in [Matt] since he has stopped consuming alcohol." PSR ¶ 94. Matt has been more involved in his son's life over the past couple years, PSR ¶ 88, and has been working consistently except for some interruptions in work very recently due to the issues with his right leg, PSR ¶ 96, and he has no desire to drink again.

A sentence of probation will thus reflect the seriousness of the offense and promote the purposes of sentencing as set forth below, while also recognizing Matt's serious health issues and other characteristics that justify a probationary sentence rather than a sentence of incarceration.

B.      Nature of the offense

On or about January 6, 2021, Matt made the extremely poor choice of traveling to DC to be

---

for his left knee and will determine when Matt will have surgery to repair the joint in his knee.

involved with the January 6 riot. He admits his role in the attack including the facts in the PSR at ¶¶ 13–31, and he sincerely regrets it. January 6 was an attack on our democracy, put people's lives at risk, and disrupted the certification of the vote count for the 2020 Presidential Election. It was a shameful day and those who participated in the riot bear responsibility for it. Matt is one of those participants and he sincerely regrets what happened and what he did that day. He apologizes to the Court for his conduct on January 6.

However, it is important to be clear about Matt's motivations that day and the extent of his involvement in the events of January 6. Matt is not a true believer in any political movement. He cannot legally vote, and he knows very little about politics and does not follow it. He is somewhat distrustful of the government in general, but he did not know if the 2020 election was "stolen" or not. And his motivation for attending the January 6 rally was not that he sincerely believed that the election was stolen.

He acted recklessly and stupidly and knows now that he should have known better then. Very shortly after getting out of jail for his most recent DUI, his uncle and co-defendant Dale Huttle asked Matt if he would drive him to DC. Dale has bad eyesight and should not drive, especially at night. Matt had nothing better to do, had just gotten out of jail, and so he regrettably agreed to drive his uncle to DC and go with him to the Trump rally. Matt's motivation was for something to do and because he thought it would be a historic event that he could document through pictures and videos. His uncle talked to him about politics and stolen elections, but Matt mostly tuned this out as he did not really care.

Matt is not alleged to have caused any property damage or committed any violence that day. Matt also did not berate or harass police officers—the only comments he made to officers were to ask an officer what his opinion was about, presumably, the election, and ask an officer what floor other rioters were on. *See* Doc. 39 at 4–5. However, he did enter the Capitol and take pictures and

videos and joined others in chants. *See id.* Matt understands the seriousness of the offense and the significant harm it caused, and he knows that he must serve a just punishment. He understands that he contributed to a terrible event that caused tragic results and he will pay the price for it.

###### C.      The need to accomplish the purposes of sentencing

The defense suggests that a sentence of probation would be sufficient to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; afford adequate deterrence to criminal conduct; protect the public; and provide the defendant with needed training, medical care, or other correctional treatment. *See* 18 U.S.C. § 3553(a)(2).

Matt has suffered consequences already from his actions on January 6, including that while on pretrial release he was unable to work as freely as he normally could, and he earned less money as a result. He also has been prevented from having any visitation with his daughter due to the pending charges. He understands now the seriousness of what he did and he will be deterred, and others will be deterred, by his federal prosecution and sentence of probation for his actions on January 6, 2021. The lengthy proposed period of home detention of 90 days will further accomplish the purposes of sentencing because it will put a significant burden on Matt's options for work (while still allowing him to at least work in some respect). A sentence of probation will thus adequately deter Matt and others, protect the public, and accomplish the purposes of sentencing.

###### D.      The need to avoid unwarranted sentencing disparities

Lastly, the defense notes that a sentence of 18 months' probation will avoid an unwarranted sentencing disparity with others charged with the same Class A misdemeanor. Other such defendants have mostly received either probation sentences or short terms in custody. *See, e.g.,* *USA v. Pert*, No. 1:21-CR-00139-TNM (24 months' probation); *USA v. Witcher*, No. 1:21-CR-00235-RC (12 months' probation); *USA v. McCreary*, No. 1:21-CR-00125-BAH (36 months' probation with 60 days' home detention and 42 days' intermittent incarceration); *USA v. Cordon*,

No. 1:21-CR-00277-TNM (12 months' probation and $4000 fine); *USA v. Marquez*, No. 1:21-CR-00136-RC (18 months' probation with 90 days' home detention); *USA v. Lentz*, No. 1:22-CR-00053-RDM (36 months' probation with 30 days' home detention); *USA v. Courtright*, No. 1:21-CR-00072-CRC (30 days' incarceration and 12 months' supervised release); *USA v. Ridge*, No. 1:21-CR-00406-JEB (14 days' incarceration and 12 months' supervised release); *USA v. Tryon*, No. 1:21-CR-00420-RBW (50 days' incarceration and 12 months' supervised release); *USA v. Howell*, No. 1:21-CR-000217-TFH (36 months' probation with 60 days' intermittent incarceration); *USA v. Gold*, No. 1:21-CR-00085-CRC (60 days' incarceration and 12 months' supervised release).

Thus, a sentence of 18 months' probation with an especially lengthy term of home detention of 90 days would be appropriate considering the sentencing factors, would accomplish the purposes of sentencing, and would avoid unwarranted sentencing disparities with other defendants who pled guilty to the same Class A misdemeanor.

### CONCLUSION

For the reasons stated above, Mr. Huttle respectfully requests that the Court impose a sentence of 18 months' probation with the first 90 days served on home detention as set forth above, and for such other relief as the Court deems reasonable and just.

Respectfully submitted:
FEDERAL DEFENDER PROGRAM
John F. Murphy
Executive Director

By: /s/ Andrew Hemmer
Andrew Hemmer
Attorney for Mr. Huttle

ANDREW HEMMER
FEDERAL DEFENDER PROGRAM
401 W. State Street - Suite 800
Rockford, IL 61101
(815) 961-0800

**CERTIFICATE OF SERVICE**

The undersigned, Andrew Hemmer, Staff Attorney of the Federal Defender Program, hereby certifies that in accordance with Fed. R. Civ. P. 5, the following document:

**DEFENDANT'S SENTENCING MEMORANDUM**

was served pursuant to the District Court's ECF system as to ECF filings, and a copy will be delivered to the defendant at his last known address.

> Respectfully submitted,
> By: /s/ Andrew Hemmer
> Andrew Hemmer
> FEDERAL DEFENDER PROGRAM
> Staff Attorney

ANDREW HEMMER
FEDERAL DEFENDER PROGRAM
401 W. State Street - Suite 800
Rockford, IL 61101
(815) 961-0800